UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Nathan Douglas Seguin</u>,
      Claimant

      v.                                    Case No. 15-cv-121-SM
                                            Opinion No. 2016 DNH 124

<u>Carolyn W. Colvin, Acting Commissioner</u>,
<u>Social Security Administration</u>,
      Defendant

<u>**O R D E R**</u>

     Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant,

Nathan Seguin, moves to reverse or vacate the Acting

Commissioner's decision denying his applications for Disability

Insurance Benefits under Title II of the Social Security Act, 42

U.S.C. § 423, and Supplemental Security Income Benefits under

Title XVI, 42 U.S.C. §§ 423, 1381-1383c (the "Act").  The Acting

Commissioner objects and moves for an order affirming her

decision.


     For the reasons discussed below, claimant's motion is

denied, and the Acting Commissioner's motion is granted.

1

**Factual Background**

I.  <u>Procedural History</u>.

In May of 2012, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he was disabled and had been unable to work since December 1, 2011.  Claimant was 27 years old at the time.  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In October of 2013, claimant, his attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Three weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then sought review by the Appeals Council, which denied his request for review.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8).  In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  "<u>Substantial Evidence" and Deferential Review</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3).  <u>See also</u> <u>Irlanda Ortiz v. Secretary of Health &</u>

Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial

evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Consolidated

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, it

is something less than a preponderance of the evidence, so the

possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.  Consolo v.

Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also

Richardson v. Perales, 402 U.S. 389, 401 (1971).


II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled

under the Act if he or she is unable "to engage in any

substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The

Act places a heavy initial burden on the claimant to establish

the existence of a disabling impairment.  See Bowen v. Yuckert,

482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health &

Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that
burden, the claimant must prove, by a preponderance of the
evidence, that his impairment prevents him from performing his
former type of work.  See Gray v. Heckler, 760 F.2d 369, 371
(1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11
(D. Mass. 1982).  If the claimant demonstrates an inability to
perform his previous work, the burden shifts to the Commissioner
to show that there are other jobs in the national economy that
he can perform, in light of his age, education, and prior work
experience.  See Vazquez v. Secretary of Health & Human
Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§
404.1512(f) and 416.912(f).


        In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,

6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if
his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).


   With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.


### Background - The ALJ's Findings

   In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory
five-step sequential evaluation process described in 20 C.F.R.
§§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540
U.S. 20, 24 (2003).  Accordingly, he first determined that
claimant had not been engaged in substantial gainful employment
since his alleged onset of disability: December 1, 2011.  Admin.

Rec. at 16.  Next, he concluded that claimant suffers from the
following severe impairment: "disc disease of the lumbar spine
(mild)."  Id.  But, the ALJ determined that claimant's
impairment did not meet or medically equal one of the
impairments listed in Part 404, Subpart P, Appendix 1.  Admin.
Rec. at 17.

     Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
"medium" work.[1]  He noted, however, that claimant cannot perform
jobs that involve standing and walking for more than six hours
during the day, sitting for more than 6 hours each day, or more
than occasional stooping.  Admin. Rec. at 17.  In light of those

_____

     [1]     "RFC is what an individual can still do despite his or
her functional limitations.  RFC is an administrative assessment
of the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and
mental activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis." Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184
at *2 (July 2, 1996) (citation omitted).

7

restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work - most, if not all, of which was performed at the "heavy" exertional level.  Id. at 20-21. See also Id. at 41 (vocational expert's testimony about claimant's work history).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Id. at 21-22. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

## Discussion

Claimant challenges the ALJ's decision on three grounds, asserting that he erred by: (1) ignoring substantial medical evidence in concluding that portions of claimant's testimony were not entirely credible; (2) failing to properly recognize

claimant's limited ability to read, write, and spell; and (3) erroneously calculating claimant's residual functional capacity.


I.   Claimant's Credibility.

Claimant challenges the ALJ's conclusion that his complaints of disabling back pain were not entirely credible. Specifically, claimant asserts that the "Commissioner does not consider all of the substantial medical evidence in her analysis and completely disregards, incorrectly interprets and/or improperly discounts the overwhelming substantial medical evidence."  Claimant's memorandum (document no. 8) at 4.


When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as his own description of those physical limitations, including his subjective complaints of pain.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996).  When, as here, the claimant has demonstrated that he suffers from an impairment that could reasonably be expected to produce the level of pain he alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the

claimant's symptoms to determine the extent to which those
symptoms limit his ability to do basic work activities.

> [W]henever the individual's statements about the
> intensity, persistence, or functionally limiting
> effects of pain or other symptoms are not
> substantiated by objective medical evidence, the
> adjudicator must make a finding on the credibility of
> the individual's statements based on a consideration
> of the entire case record.  This includes medical
> signs and laboratory findings, the individual's own
> statements about the symptoms, any statements and
> other information provided by the treating or
> examining physicians or psychologists and other
> persons about the symptoms and how they affect the
> individual
> . . ..

> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R.
> 404.1529(c) and 416.929(c) describe the kinds of
> evidence, including the factors below, that the
> adjudicator must consider in addition to the objective
> medical evidence when assessing the credibility of an
> individual's statements.

SSR 96-7p, Policy Interpretation Ruling Titles II and XVI:

Evaluation of Symptoms in Disability Claims: Assessing the

Credibility of an Individual's Statements, 1996 WL 374186 (July

2, 1996).  Those factors include the claimant's daily

activities; the location, duration, frequency, and intensity of

the claimant's pain or other symptoms; factors that precipitate

and aggravate the symptoms; the type dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms.  Id.  See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined claimant and/or reviewed his medical records, and to consider the other relevant factors identified by the regulations and applicable case law. Part of the ALJ's credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability."  Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court.  See, e.g., McNelley v. Colvin, No. 15-1871, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference,

11

especially when supported by specific findings.") (<u>quoting</u>
<u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d
192, 195 (1st Cir. 1987)); <u>Irlanda Ortiz</u>, 955 F.2d at 769
(holding that it is "the responsibility of the [Commissioner] to
determine issues of credibility and to draw inferences from the
record evidence.  Indeed, the resolution of conflicts in the
evidence is for the [Commissioner] not the courts").

Here, in reaching the conclusion that claimant was not
entirely credible when he asserted that he needed to spend
substantial portions of the day in bed, was unable to sleep, and
was disabled by virtue of back pain, the ALJ considered, among
other things, the following. First, the ALJ noted that shortly
before his alleged onset of disability, claimant reported that
he had begun working in construction and was feeling upbeat,
reported that prescribed medications had "greatly improved his
pain," and stated that he found it possible to work at home with
"only mild interruptions from pain." Admin. Rec. at 20 (citing
Admin. Rec. at 300).  And, one month prior to his alleged onset
date, claimant reported that he was "eating and sleeping well."
<u>Id.</u>  One month after his alleged onset, claimant reported that
he "has found good relief" for his back pain with the use of

oxycodone 10mg, three time daily.  See, e.g., Id. at 299.  The
ALJ also noted that, in April of 2013, claimant reported a
recurrence of back pain, caused by "overuse" of his back while
raking leaves in his yard – an activity inconsistent with his
reported activities of daily living.  Id.


    In making his credibility determination, the ALJ also
observed that none of claimant's treating sources described him
as disabled or unable to work.  Id. at 20.  Moreover, as
discussed more fully below, that ALJ also found not credible
claimant's assertion that he is unable to read or write, in
light of educational testing records that repeatedly showed that
claimant scored in the low-average realm on reading and
comprehension testing.  See, e.g., Admin. Rec. at 533.  Finally,
the ALJ noted that, "the medical evidence is replete with
instances of the claimant's overuse of narcotic medications,
illegal purchase of narcotic medications and use of illegal
drugs such as marijuana and cocaine.  This evidence, along with
his purported illiteracy, casts significant doubt about his
credibility."  Id.

In light of the foregoing, the court cannot conclude that the ALJ neglected to consider any of the relevant factors, or that he erred in making his assessment of claimant's credibility. To be sure, there is substantial evidence in the record supportive of claimant's assertion that he experiences chronic back pain. Importantly, however, there is also substantial evidence in the record to support the ALJ's conclusion that his subjective complaints about the disabling nature of that pain are over-stated.

II. <u>Claimant's Ability to Read, Write, and Spell</u>.

Next, claimant asserts that the ALJ failed to properly acknowledge and consider his "marked/severe limitations in the areas of reading, spelling and writing." Claimant's Memorandum at 9. But, as the Commissioner points out, substantial evidence in the record supports the ALJ's conclusion that claimant's deficits are not as severe as he suggests. Although claimant has not undergone any recent testing, the record contains the results of several academic tests he underwent while in grade school. Those tests revealed that, from the ages of about five through fourteen, claimant routinely demonstrated average general intelligence, <u>see, e.g.</u>, Admin. Rec. at 511, and he

14

showed the ability to produce written statements that were "generally well-organized and contained well-formulated sentences," Id. at 498.  At age twelve, he possessed "academic skills that are within the average range in the areas of Mathematics Reasoning, Reading Comprehension, Listening Comprehension, Oral Expression and Written Expression.  Basic Reading, Spelling, and Numerical Operations subtest standard scores [were] below average."  Id. at 499.  A year later, results of claimant's testing revealed that his scores were "within the average range in the areas of Mathematics Reasoning, Listening Comprehension, Oral Expression and Written Expression. Scores on the Reading Comprehension [were] in the low average range.  Basic Reading, Spelling and Numerical Operations scores [were] in the low range."  Id. at 502.  But, as one of the psychologists who administered claimant's testing observed, although comparisons between claimant's expected and his actual test scores showed a significant discrepancy in reading, spelling, and comprehension, that "pattern of weaknesses is commonly observed in students with Attention Deficit Disorder,

especially those students who, like Nathan, are of at least

average general intelligence." Id. at 512.[2]


Moreover, as the Acting Commissioner notes, claimant

previously worked as a heating and air conditioner

installer/servicer/helper (DOT Code No. 637.644-010) - a job

that has a "language development" rating of two (on a scale of

one to six), a "reasoning development" rating of three (out of

six), and a "specific vocation preparation" level of six (out of

nine). See Admin. Rec. at 42. The ALJ found that he could work

as a merchandise marker (DOT Code No. 209.587-034), which has LD

rating of one (one lower than claimant's prior job), an RD of

two (one lower than claimant's prior job), and an SVP of two

(four lower than claimant's prior job). Claimant has not

explained how his difficulties with reading and writing have

become worse over the intervening years since he worked as a

heating and air conditioner installer/servicer/helper, nor has

he shown that his problems in those realms would render him

_____

2     Parenthetically, the court notes that claimant does
not assert that he currently suffers from, or at any time since
his alleged onset of disability he has suffered from, attention
deficit disorder.

incapable of performing the responsibilities of merchandise
handler.

Given the record evidence, as well as the ALJ's supportable
determination that claimant's testimony on this issue was less
than entirely credible, the court is constrained to conclude
that there is adequate (i.e., substantial) evidence in the
record to support the ALJ's conclusion that "claimant's
assertion that he is unable to read . . . is inconsistent with
educational records." Id. at 20.

III. Claimant's Residual Functional Capacity.

Finally, claimant says the ALJ's RFC determination is not
supported by substantial evidence.  As noted above, the ALJ
concluded that claimant retained the residual functional
capacity to perform medium work, except he could stand, walk, or
sit for only six hours during a typical work day, and he was
limited to only occasional stooping.  Admin. Rec. at 17.
Claimant asserts that the ALJ did "not afford any meaningful
weight to arguably the best evidence in this case, the objective
MRI testing results, conducted in November 2011, within a month
of the claimant's alleged onset date."  Claimant's memorandum at

5.  According to claimant, that "objective evidence of record clearly supports [the assertion] that [he] has a disk herniation at L5-S1."  Id.  Contrary to claimant's suggestion, no one denies that he has a herniated disc.  Indeed, the ALJ acknowledged that claimant's MRI testing in November of 2011 revealed "disc herniation at L5-S1."  Id. at 19.  But, the ALJ also noted that approximately six months later, claimant returned to work building decks.  And, the fact that claimant was able to return to work following his diagnosis illustrates an important point: medical diagnoses, such as "herniated disc," are "medical labels which carry no readily discernible message about the physical capacities of an individual suffering from the conditions they denote."  Class Rosario v. Secretary of Health & Human Services, 1990 WL 151315 at *2 (1st Cir. July 16, 1009).  See also McKenzie v. Commissioner, Social Security Administration, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual.").  As the United States District Court for the District of Massachusetts has noted, "[f]or Social Security disability purposes, the issue is not whether an impairment exists, but whether it is

18

sufficiently severe to prevent work."  <u>Stefanowich v. Colvin</u>,
No. CIV.A. 13-30020-KPN, 2014 WL 357293, at *1 (D. Mass. Jan.
30, 2014) (citations omitted).

Here, the court's review of the record suggest that while
no one disputes that claimant has a herniated disc and suffers
from back pain, not one of his treating sources has opined that
his condition is disabling.  Claimant does not argue otherwise.
And, as noted above, the ALJ supportably concluded that
claimant's subjective complaints of disabling back pain were not
entirely credible.

But, says claimant, in concluding that he was not disabled
by reason of his back pain, the ALJ impermissibly gave too much
weight to the opinion provided by non-examining, state agency
physician Meghana C. Karande, M.D.  After reviewing claimant's
medical records, Dr. Karande opined that he retained the RFC for
medium work.  Admin. Rec. at 52.  The ALJ determined that Dr.
Karande's opinion was consistent with the medical evidence and
afforded her opinion "great weight."  <u>Id.</u> at 20.  Claimant
challenges the ALJ's reliance upon Dr. Karande's opinion on
grounds that it necessarily failed to take into account

19

subsequent medical testing, as well as an injury he sustained in
September of 2012.  That argument falls short, however.  As the
Acting Commissioner notes, official agency guidance provides
that medical opinions that pre-date other evidence in the record
may be afforded substantial weight, so long as they are
consistent with subsequently-obtained medical evidence.  See SSR
96-6p, Policy Interpretation Ruling Titles II and XVI:
Consideration of Administrative Findings of Fact by State Agency
Medical and Psychological Consultants, 1996 WL 374180 at *2
(July 2, 1996).


        According to claimant, the ALJ erred in giving substantial
weight to the opinion of Dr. Karande because she was unaware of
his injury in September of 2012, when he says he fell and
fractured his tailbone.  The evidence of record on that point
is, however, conflicting at best.  When claimant initially
presented to Huggins Hospital, he was examined by Scott Hobson,
M.D., who reported that claimant "had x-rays of the coccyx,
lumbar spine, cervical spine and right hip.  They were all
normal except there is a fractured coccyx with minimal
displacement."  Admin. Rec. at 239.  The following day, however,
a radiologist examined claimant's x-rays and reported: "No

fractures or dislocations identified.  No significant bony or soft tissue abnormality is identified.  Impression: Negative exam." Id. at 380.

But, even assuming that claimant did fracture his coccyx in September of 2012, he has not shown how that injury, either alone or in combination with his other impairments, is sufficient to undermine the ALJ's reliance on the opinion of Dr. Karande.  Nor does it undermine that ALJ's conclusions regarding claimant's RFC.  See, e.g., Id. at 413 (November, 2012, examination notes of Thomas Brudz, PA, containing no reference to any fracture of claimant's coccyx, but noting claimant "stands without any scoliosis.  He ambulates with a nonantalgic gait and is able to toe and heel walk.  There was no tenderness to any point of his spine, buttock or greater trochanter.  He has full lumbar flexion going towards his ankles with some tightness in his low back, and he extends about 30 degrees with some left-sided low back pain.  His incision was intact and all dermatonal patterns of both lower extremity.  His reflexes are 2+ and symmetrical at the knees and ankles.  Motor testing is 5/5 in both lower extremity.  Straight leg raise and crossed straight leg raise are negative.  Hip range of motion was full

and pain-free.  Faber's test is negative but did cause some left groin discomfort.  There is no clonus and negative Babinski.  Distal pulses are intact.").

### Conclusion

Judicial review of the ALJ's decision is both limited and deferential.  This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act.  Consequently, the issue before the court is not whether it believes claimant is disabled.  Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  Provided the ALJ's findings are properly supported by substantial evidence – as they are in this case – the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a

different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of the ALJ's decision (October 24, 2013).  The ALJ's assessment of claimant's credibility, as well as his RFC determination and his conclusions concerning claimant's alleged illiteracy, are well-reasoned and adequately supported by substantial documentary evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 8) is denied, and the Acting Commissioner's motion to affirm her

decision (document no. 11) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

                          Steven J. McAuliffe
                          United States District Judge

July 21, 2016

cc:  Christine W. Casa, Esq.
     T. David Plourde, Esq.